(No. 49369.-

JAMES GREENE, Appellee, v. THE CITY OF CHICAGO et al., Appellants.

*Opinion filed Oct. 6, 1978.—Rehearing Denied Dec. 1, 1978.*

William R. Quinlan, Corporation Counsel, of Chicago (Daniel R. Pascale and Peter Fitzpatrick, of counsel), for appellant City of Chicago.

Herbert F. Stride, Ltd., of Chicago (William J. Harte, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Following a bench trial in this action to recover damages for personal injuries, the circuit court of Cook County entered judgment in the amount of $750,000 in favor of plaintiff, James Greene, and against defendants, the city of Chicago (hereafter defendant) and Timothy J. Ferm. Defendant appealed, the appellate court affirmed (48 Ill. App. 3d 502), and we allowed defendant's petition for leave to appeal. The facts are adequately stated in the appellate court opinion and will be reviewed here only to the extent necessary to discuss the issues.

On December 12, 1970, at approximately 11:30 p.m., while plaintiff was driving south on Wentworth Avenue, his automobile stalled and came to a stop a short distance north of the intersection with 104th Street. The weather was overcast, with rain turning to snow, and visibility was poor. He testified that between 103rd and 104th Streets the overhead lights were out and it was "pitch dark." After several attempts to start his automobile, plaintiff switched on the emergency blinkers, got out of the automobile, and

opened the trunk to remove a flare which he intended to light in order to warn other motorists. While standing behind his vehicle, he was struck by an automobile driven by defendant Timothy J. Ferm, and suffered severe injuries as the result of which both legs were amputated.

As grounds for reversal defendant contends that the circuit court abused its discretion in denying defendant's motion to file a late jury demand; that it is not liable for plaintiff's injuries for the reason that neither the absence of lights nor the use of inadequate or defective lights can be held to be negligence unless it was shown that there was a defect in the street; that the evidence does not support the finding that the failure to provide lights was a proximate cause of plaintiff's injury; and that the finding by the circuit court that the street lights were not lighted at the time of the occurrence was against the manifest weight of the evidence.

We consider first defendant's contention that the circuit court erred in denying its motion for leave to file a demand for jury trial. The complaint was filed on August 3, 1971, and defendant's answer was filed on September 23, 1971. Neither party demanded a jury trial. On February 11, 1974, after the case had been assigned for trial, defendant filed a motion for leave to file instanter a demand for jury trial. It was stated in the motion that on January 14, 1974, a special assistant corporation counsel had been employed to try this case; that after giving notice to all parties he had, on January 29, 1974, filed his appearance as additional counsel for defendant; and that the failure to file a jury demand with defendant's original pleading was the result of "inadvertence and oversight of the assistant corporation counsel who was handling the case at that time." The motion was denied on February 25, 1974, and trial of the case commenced on June 3, 1974.

The parties are not in agreement concerning what

would have occurred had defendant's motion been allowed. It is plaintiff's position that the case would have been removed from the trial docket and thereafter would wait its turn on the jury docket, and that the trial would have been delayed for a substantial period of time. It is defendant's contention that the case was assigned to the circuit judge who heard it and with or without a jury would have proceeded to trial within a reasonable time.

The Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 1 *et seq.*) in pertinent part provides:

> "(1) A plaintiff desirous of a trial by jury must file a demand therefor with the clerk at the time the action is commenced. A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his answer. Otherwise, the party waives a jury." Ill. Rev. Stat. 1977, ch. 110, par. 64(1).

> "On good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment." Ill. Rev. Stat. 1977, ch. 110, par. 59.

Supreme Court Rule 183 (58 Ill. 2d R. 183) provides:

> "The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time."

This court has consistently held that the statute regulating the right to jury trial " 'should be liberally construed in favor of the right and the inclination of the court should be to protect and enforce the right.' " (*Hudson v. Leverenz* (1956), 10 Ill. 2d 87, 93, quoting *Morrison Hotel & Restaurant Co. v. Kirsner* (1910), 245 Ill. 431, 433.) Defendant argues that following the decision of *Hudson v. Leverenz* the appellate courts have applied two different tests in determining whether a late jury demand should be allowed; that one line of cases (see *Hernandez v. Power Construction Co.* (1976), 43 Ill. App.

3d 860; *Department of Public Works & Buildings v. Melling* (1966), 78 Ill. App. 2d 37; *Hartsock v. Bress* (1963), 40 Ill. App. 2d 66; *Dawson v. Maxwell* (1957), 13 Ill. App. 2d 228) holds that there must be "an absence of inconvenience to the court or parties litigant and the absence of prejudice to any person in any manner whatsoever," and the other (see *Smith v. Realcoa Construction Co.* (1973), 13 Ill. App. 3d 254; *Johnson v. Sabben* (1972), 7 Ill. App. 3d 238) that the test is not the mere absence of inconvenience or prejudice "but rather a demonstration of 'good cause shown' to excuse the time requirements for filing a jury demand and further that mere mistake or inadvertence is not sufficient to demonstrate good cause." It argues further that the affidavit filed with its motion for leave to file the late jury demand alleged facts which were not controverted by plaintiff and that its showing in the affidavit that permitting the late filing of the jury demand would cause no actual inconvenience or prejudice supplied the "good cause" essential to excuse the failure to timely file the jury demand.

The most frequently cited decisions of this court involving this question are *Stephens v. Kasten* (1943), 383 Ill. 127, and *Hudson v. Leverenz* (1956), 10 Ill. 2d 87. In *Stephens,* it was held that the circuit court had abused its discretion in denying the defendant's late-filed jury demand "especially since it appears from the record that the filing of such jury demand at the later date did not tend to inconvenience the court or parties litigant or prejudice any rights in any manner whatsoever. To arbitrarily refuse to accord to parties litigant the right to file a jury demand after time therefor has expired, upon good cause shown, is an abuse of the discretion of the court." (383 Ill. 127, 135.) In *Hudson v. Leverenz,* the original complaint had been filed on March 3, 1954, and on October 4, 1954, there was a docket setting at which both sides were represented by counsel. At that time the

case was placed on the nonjury calendar as the first case on December 13, 1954. On December 1, 1954, defendants filed a jury demand. The court pointed out that had plaintiffs known at the October 4th docket setting of the defendants' desire for a jury trial the case could have been placed on a jury docket in November or early December. On the other hand, had the court permitted the filing of the demand in December, the earliest possible trial date would have been in February of the following year. The court pointed out: "That the plaintiffs would be inconvenienced by the delay was not disputed, nor did the defendants advance any reason or 'good cause' other than to say their failure resulted from 'misapprehension of the facts, mistake and inadvertence.' On this record, we do not believe the trial judge abused its discretion in refusing the request for a jury trial." (10 Ill. 2d 87, 94.) In *Village of Park Forest v. Walker* (1976), 64 Ill. 2d 286, citing *Hudson v. Leverenz,* the court said, "Similarly, the defendant in the instant case has not demonstrated any good cause for allowance of his motion, and the trial court did not abuse its discretion in denying said motion." 64 Ill. 2d 286, 300.

We do not agree with defendant that the showing that permitting the late filing of a jury demand would not cause inconvenience to the parties litigant or the court, or in any manner prejudice them, is sufficient to supply the requisite "good cause shown." To so construe section 64(1) of the Civil Practice Act would in effect permit the demand to be made at any time so long as neither the court nor a litigant was inconvenienced or prejudiced. We hold, therefore, that in addition to showing that no inconvenience or prejudice would result from the late filing of the demand it was necessary that good cause be shown for failure to comply with the statute. Accord, *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90.

The determination of what constitutes good cause shown must be made upon the facts of each case, and

absent an abuse of discretion the decision of the circuit court will not be disturbed. In this instance the allegation that the failure to file the demand was the result of inadvertence of an assistant corporation counsel does not furnish the basis for holding that the trial court abused its discretion.

We consider next defendant's contention that it had no duty to maintain overhead street lights, that its only duty was to place lights warning against known or existing dangers or obstructions, and "that neither the absence of lights nor the use of inadequate or defective lights is negligence if there is no street defect." Defendant argues that the affirmance of the appellate court's holding will unduly extend the liability of municipalities. Plaintiff responds that once defendant elected to install lighting, the lighting must be maintained. In *Johnston v. City of East Moline* (1950), 405 Ill. 460, which involved a nonfunctioning traffic signal, the court said:

"As early as *City of Chicago v. Powers,* 42 Ill. 169, the principle was recognized that where a municipality undertakes to protect a street or bridge by lights it is liable for negligence if it does it in an insufficient manner. ***

A municipal corporation acts judicially or exercises discretion when it selects and adopts a plan in the making of public improvements, but as soon as it begins to carry out that plan it acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner." (405 Ill. 460, 466.)

In *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, the plaintiff drove past the end of the street which ended in a "T" intersection and crashed into a tree. The plaintiff contended that the overhead street light was placed on the wrong corner, causing the intersection to be improperly illuminated. The court said: "The court has long recog-

nized that where a city undertakes to provide lights, it is liable for injuries which result from deficient or inadequate ones. [Citations.] In holding a city responsible for injuries thus caused the court is not reviewing the city's discretion in selecting a plan. It is not controlling or passing upon the city's estimate of public needs. Nor is it deciding what the 'best' kind of improvement may be. It is simply saying that when a city creates a hazardous condition and someone is injured as a consequence it must respond in damages, just as others are required to do." 43 Ill. 2d 177, 180-81.

We do not agree with defendant's contention that the rule applies only when the lights are placed for the purpose of warning of a defect or hazard. In *Baran,* the beam of the overhead light caused a glare which affected the driver's vision. Here, the co-defendant, Timothy Ferm, testified that he was proceeding south on Wentworth Avenue when he came to 103rd Street, where he stopped at a traffic light. As he crossed the intersection of 103rd Street the overhead street lights were no longer burning and visibility dropped from 150 feet to about 50 or 60 feet. He stated that this reduction in visibility made it difficult for him to see and that he did not see plaintiff's automobile until he was 60 feet from it and did not know that it was stationary. The driver of the automobile immediately behind Ferm's vehicle testified that when he crossed the intersection of 103rd Street visibility dropped suddenly from 150 feet to about 25 to 50 feet. He stated that it was so dark that he had to get out of his car in order to see what Mr. Ferm had hit. We see no basis for distinguishing the cases and hold that the rule as enunciated in *Johnson* and *Baran* is applicable to the facts shown in this record.

We consider next defendant's contention that the finding of the circuit court that the street lights were not lighted at the time of the occurrence was against the manifest weight of the evidence. Six witnesses testified that on the date of the occurrence the lights in the vicinity

of the accident were not burning. It was testified that the lights had been off for a period of several weeks, and that they had been off intermittently. A bus driver employed by the Chicago Transit Authority testified that approximately two weeks before the occurrence the bus he was driving had struck a light pole at 103rd Street and Wentworth and that after that occurrence the lights south of 103rd Street were off for approximately two months. Defendant adduced testimony to the effect that the lights were burning at the time that plaintiff was injured and that defendant's records showed no reports of the lights having been out in that vicinity. Concerning the manner of reviewing the findings of the trial court in a bench trial in which the evidence was conflicting, the court in *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, said: "Although a trial court's holding is always subject to review, this court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. [Citations.] Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of facts, have come to a different conclusion." We are unable to say that the circuit court's findings are against the manifest weight of the evidence.

Citing *Cunis v. Brennan* (1974), 56 Ill. 2d 372, *Winnett v. Winnett* (1974), 57 Ill. 2d 7, and *Storen v. City of Chicago* (1940), 373 Ill. 530, defendant argues that assuming that the street lights on Wentworth Avenue were not lighted on the night in question, the absence of artificial lighting was not a proximate cause of plaintiff's

injury. It argues that "an ordinary driver traveling within the speed limits *** would be expected to see a stalled automobile in time to stop or turn aside within the range of his headlights *** and would be expected to see the flashing emergency lights in time to avoid a collision." Defendant poses the question "Is it to be expected that in every unlighted roadway a vehicle will stall and that an intoxicated driver will not see it?"

In *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380-81, the court said:

> "What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. (*Illinois Central Railroad Co. v. Oswald,* 338 Ill. 270; *Hartnett v. Boston Store of Chicago,* 265 Ill. 331.) An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. (*Illinois Central Railroad Co. v. Oswald,* 338 Ill. 270; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242.) The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. (*Wintersteen v. National Cooperage and Woodenware Co.* 361 Ill. 95; *Sycamore Preserve Works v. Chicago and Northwestern Railroad Co.* 366 Ill.

11.) What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all of the evidence. *Phillabaum v. Lake Erie and Western Railroad,* 315 Ill. 131.

The rule that the causal connection between a person's negligence and an injury is broken by the intervention of a new, independent, efficient and intervening cause so that the negligence is not actionable is subject to the qualification that if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer, his negligence may be considered the proximate cause of the injury and he may be held liable notwithstanding the intervening cause. The intervening act of a third person does not necessarily relieve the author of an earlier negligent or wrongful act from responsibility when the intervening cause of an injury is of such nature as could reasonably have been anticipated, in which case the earlier negligent act, if it contributed to the injuries, may be regarded as the proximate cause. *Garibaldi & Cuneo v. O'Connor,* 210 Ill. 284; *Armour v. Golkowska,* 202 Ill. 144."

Concerning the contentions with respect to Ferm's driving while intoxicated, we find apposite the statement in *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 80, that "The intervention of a criminal act, however, does not necessarily interrupt the relation of cause and effect between negligence and an injury. If at the time of the negligence, the criminal act might reasonably have been foreseen, the causal chain is not broken by the intervention of such act." The circuit court's finding that defendant Ferm's conduct was a concurrent cause of plaintiff's injury, and not an independent and intervening

cause, is not against the manifest weight of the evidence. For the reasons stated the judgment is affirmed.

*Judgment affirmed.*